UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

Present: The Honorable    CHRISTINA A. SNYDER

| Catherine Jeang | Deborah Parker | N/A |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:          Attorneys Present for Defendants:

Jason Yang                    Christopher Dusseault
Joseph Edmonds

**Proceedings:**      ZOOM HEARING RE: MOTION FOR SUMMARY
JUDGMENT (Dkt. 60, filed on October 14, 2024)

## I.    INTRODUCTION

On December 15, 2022, Abimael Enrique Corea Lopez and 186 other individuals[1] (collectively "plaintiffs") filed suit against Inter-Con Security Systems Inc. ("Inter-Con U.S."). Dkt. 1. Plaintiffs seek recognition of a foreign judgment obtained against Inter-Con U.S. in a labor court in Honduras.

This case is properly before the Court on the basis of diversity jurisdiction. 28 U.S.C. § 1332(a)(2). Inter-Con U.S. is a California corporation, with its principal place of business in Pasadena, California, dkt. 60-2 ("Stack Decl.") ¶ 2, and plaintiffs are citizens of Honduras, dkt. 1 ¶ 189. The amount in controversy is L$162,880,553.03, which is approximately $6,500,000. Dkt. 1; dkt. 60 ("Mot.") at 1.

On March 8, 2023, plaintiffs filed a first amended complaint. Dkt. 17.

On March 22, 2023, Inter-Con U.S. filed a motion to dismiss. Dkt. 18. On May 15, 2023, the Court denied Inter-Con U.S.'s motion to dismiss. Dkt. 29.

---

[1] For the complete listing of all 187 plaintiffs' names, see Dkt. 17 ¶¶ 1–187.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

On October 14, 2024, Inter-Con U.S. filed the instant motion for summary judgment. Mot. On October 28, 2024, plaintiffs filed an opposition. Dkt. 64 ("Opp."). On November 4, 2024, Inter-Con U.S. filed its reply. Dkt. 67 ("Reply").

On November 18, 2024, the Court held a hearing. Having carefully considered the parties' arguments and submissions, the Court finds and concludes as follows.

## II.    BACKGROUND

Unless otherwise noted, the Court references only facts that are uncontroverted and to which evidentiary objections, if any, have been overruled.[2]

Inter-Con U.S. has its headquarters in Pasadena, California and is incorporated in California. Stack Decl. ¶ 2. The Inter-Con U.S. subsidiary Inter-Con Security Systems de Honduras S.De R.L ("IC Honduras") was formed in Honduras. Id. ¶ 4. Inter-Con U.S. holds 99% of shares of IC Honduras. Dkt 67-3 ¶ 12. On August 2, 2018, plaintiffs filed a complaint against IC Honduras and Inter-Con U.S. in a Honduran court alleging labor law violations. Id. ¶¶ 2, 13. On November 14, 2018, IC Honduras filed an answer in that lawsuit. Id. ¶ 3. On November 19, 2021, the court in Honduras found both defendants liable pursuant to Article 7 of the Honduran Labor Code and entered a judgment against IC Honduras and Inter-Con U.S. in the amount of L$46,696,091.68. Id. ¶¶ 5, 15. On March 15, 2022, an application for labor compensation was made to the Honduran court, seeking L$116,184,461.53 pursuant to Honduras Labor Code 113. Id. ¶ 7. On April 7, 2022, the court in Honduras issued an order requiring IC Honduras and

---

[2] Plaintiffs filed a series of evidentiary objections challenging evidence submitted by defendant. Dkt 64-7. Defendant also filed a series of evidentiary objections challenging evidence presented by plaintiffs in their opposition. Dkt. 67-4. To the extent the Court relies on evidence to which there has been an objection, the Court has overruled the objection to that evidence. Specifically, the Court overrules plaintiffs' objections relating to the Stack Declaration because Stack, since becoming Chief Operating Officer in 2015, has "been the Inter-Con U.S. employee with the most direct contact with IC Honduras," and therefore has personal knowledge of the facts he sets forth. Stack Decl. ¶ 9. All other objections are denied as moot.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|----------|------------------------|------|-------------------|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

Inter-Con U.S. to pay the combined amount to plaintiffs. Id. ¶ 8. Inter-Con U.S. never appeared in the lawsuit in Honduras. Id. ¶ 10.

The parties dispute the nature and extent of Inter-Con U.S.'s contacts with Honduras. Dkt. 67-1 ¶ 2. Inter-Con U.S. says that it "has never had any office in Honduras, has not had any employees in Honduras, has not owned any property in Honduras, and has never been registered to do business in Honduras." Stack Decl. ¶ 3. Plaintiffs say that an email from an Inter-Con U.S. employee to a manager at IC Honduras, providing it with a statement to send to its employees announcing the end of IC Honduras's operations and the employees' resulting termination, casts doubt on Inter-Con U.S.'s denial of its connections with Honduras. Dkt. 64-9, Exh. 11 at 803.

The parties also dispute Inter-Con U.S.'s involvement with IC Honduras's business operations. Dkt. 67-1 ¶¶ 5-7. Inter-Con U.S. asserts that IC Honduras's managers were employed by IC Honduras directly and lived in Honduras, that IC Honduras owned its own offices and managed its own independent bank accounts, and that "IC Honduras made its own day-to-day decisions." Stack Decl. ¶¶ 5-6. Inter-Con U.S. also asserts that IC Honduras hired, managed, paid, and scheduled employees, as well as "maintained its own licenses and permits for security services, employed Honduran attorneys for compliance advice, and directly received payment from its clients for services rendered." Dkt. 67-1 ¶ 6 (citing Stack Decl. ¶ 6). Plaintiff disputes this, citing the email referenced above, providing potential termination language. Dkt. 64-9, Exh. 11 at 803. Inter-Con U.S. says it did not employ or pay plaintiffs nor did it participate in hiring and firing decisions or have access to personnel files and payroll records. Dkt. 67-1 ¶ 7. Plaintiff disputes this on the basis of the same evidence. Dkt. 64-9, Exh. 11 at 803.

Before its closure, IC Honduras's business was primarily devoted to the provision of security services to the United States Embassy, but it also had other clients in Honduras. Stack Decl. ¶ 4. IC Honduras's operations did not earn a profit. Rather, it relied on loans from Inter-Con U.S. totaling approximately $5 million, which it ultimately did not pay back, to operate. Dkt. 67-1 ¶ 8.

All 187 plaintiffs in this matter worked at IC Honduras until their termination without cause on July 31, 2018. Dkt. 67-3 ¶ 1. The parties dispute whether on September 28, 2017, IC Honduras sent a letter to its employees informing them that the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

United States would be contracting with a different company for Embassy security services going forward and informing employees that they would be contacted about transitioning their employment. Dkt. 67-1 ¶ 9. Inter-Con U.S. asserts that the letter was sent, id., but plaintiffs say that though the letter was prepared, Inter-Con U.S. provides no evidence it was ultimately sent out to employees. Dkt. 64-9, Exh. 13 at 817-819.

When IC Honduras lost its contract with the American Embassy, it lost its main source of revenue. Dkt. 67-1 ¶ 10. On June 7, 2018, Richard Stack, an employee of Inter-Con U.S. emailed a manager of IC Honduras, Melva Aguilar, informing her that Inter-Con U.S. "was not 'authorized to make additional investments' or 'lend additional funds' to IC Honduras." Id. (citing Stack decl. ¶¶ 10, 14).

After plaintiffs were allegedly terminated by IC Honduras, on or about July 31, 2018, a number of plaintiffs "immediately began working at other security firms doing the same job, including at least one of whom who wore his same uniform at his new job." (citing dkt. 60-7 ("Lopez Dep. Tr.") at 16:1-8; dkt. 60-10 ("Corrales Dep. Tr.") at 12:9-13; dkt. 60-9 ("Chinchilla Dep. Tr."); dkt. 60-8; dkt. 60-19). Over 100 of the plaintiffs in this action were paid more in their subsequent employment than they had been paid by IC Honduras. Dkt. 67-1 ¶ 12 (citing dkt. 60-8).

The parties dispute whether Inter-Con U.S. and IC Honduras coordinated regarding the defense of the litigation in Honduras. Dkt. 67-1 ¶ 14. Inter-Con U.S. says that IC Honduras had local managers who handled the litigation and that IC Honduras neither coordinated with Inter-Con U.S. regarding the lawsuit, nor did it provide any litigation papers to Inter-Con U.S. Id. (citing Stack Decl. ¶ 16). Plaintiff says that as part of its answer in the Honduran Lawsuit, IC Honduras indicated that it was communicating with Inter-Con U.S. about the suit. Dkt. 64-2 ("Fernandez Decl.") (citing dkt. 64-8, Exh. 2 at 119 (saying that "work sessions have been established with the majority shareholder so that it responds to them, a respond that has not yet been stated")). Inter-Con U.S. claims that the statements made by Fanny Carolina Salinas Fernandez ("Fernandez"), plaintiffs' Honduran counsel, who is a fact witness in this action, regarding communication between IC Honduras and Inter-Con U.S. are hearsay and that the record in this action only supports the conclusion that IC Honduras had tried to contact Inter-Con U.S. and that Inter-Con U.S. had not responded, "which undercuts any claimed coordination." Dkt. 67-1 ¶ 14.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**              **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

The parties dispute whether service of process of the action in Honduras was effectuated on Inter-Con U.S. Plaintiffs claim "that 'Mr. Enrique Hernandez Jr. [Chief Executive Officer of Inter-Con U.S.] was notified' and a 'warrant was sent by certified mail' regarding the Honduran Lawsuit on July 18, 2019." Dkt. 67-1 ¶ 15. The parties dispute whether notice was in fact given. Dkt. 67-1 ¶ 16. Inter-Con U.S. says that the certified mail receipt has an address that was neither Hernandez's nor Inter-Con U.S.'s correct address. Id. (citing Stack Decl. ¶ 17; dkt. 60- 15). Plaintiff says that the papers were served on Inter-Con U.S. by the Consulate General of Honduras and that Inter-Con U.S. admitted in its Request for Admissions that it had received them. Dkt. 64-3 ("Yang Decl.") ¶ 3; dkt. 64-9, Exh. 8 at 788-95; dkt. 64-9, Exh. 12. Inter-Con U.S. states that the documents to which plaintiffs cite shows only the same mistaken address, that the response to the Request for Admissions was "early in the case," "does not raise a genuine dispute regarding the address to which notice was purportedly mailed," and that the only papers Inter-Con U.S. did receive contained different case numbers than those for the case at issue here. Dkt. 67-1 ¶ 16. The documents received by Inter-Con U.S. in 2019 refer to the company as "INTERCOM SECURITY, INC." and describe Hernandez incorrectly as the president. Dkt. 67-1 ¶ 19 (citing Stack Decl. ¶ 20).

The court in Honduras entered a default judgment against Inter-Con U.S. on September 29, 2021. Dkt 67-1 ¶ 23 (citing dkt. 60-11 ("Lopez Expert Rep.") at 3, 5).

The parties dispute the basis for damages awarded. Dkt. 67-1 ¶¶ 24-26. According to Inter-Con U.S., "[r]oughly 71% of the Honduran Default Judgment is the workers' full salaries from the date of termination until the date the Honduran judgment was entered over three years later," dkt. 67-1 ¶ 24 (citing Lopez Expert Rep. at 3,5; dkt. 60-18 at 3), about 18.5% represents a severance award, id. ¶ 25 (citing Lopez Expert Rep. at 6), and roughly 3.5% constitutes notice damages "resulting from IC Honduras's failure to provide sufficient pre-termination notice to employees," id. ¶ 26 (citing Lopez Expert Rep. at 6). Plaintiff cites to Fernandez's declaration wherein she says, "the amounts obtained in the judgment from the Honduras Lawsuit were based on the Unit for Calculation of Labor Benefits and Compensations from the Secretary of Labor and Social Security," and cites to over 400 pages of the evidentiary record setting forth damage calculations. Fernandez decl. ¶ 5; dkt. 64-9, Exh. 3 at 134-507.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

## III.    REQUEST FOR JUDICIAL NOTICE

Federal Rule of Evidence 201 empowers a court to take judicial notice of facts that are either "(1) generally known within the territorial jurisdiction of the trial court; or (2) capable of accurate and ready determination by resort to sources whose accuracy cannot reasonably be questioned." Fed. R. Evid. 201(b); see also Mullis v. U. S. Bankr. Court for Dist. of Nevada, 828 F.2d 1385, 1388 n.9 (9th Cir. 1987). Federal Rule of Civil Procedure 44.1 governs the process for determining foreign law and permits the Court to consider "any relevant material, including testimony without regard to its admissibility under the Federal Rules of Evidence." Fed. R. Civ. P. 44.1. The Advisory Committee notes that Rule 44.1 "refrains from imposing an obligation on the court to take 'judicial notice' of foreign law." Id.

Here, plaintiffs request that the Court take judicial notice of the following:

(1) Plaintiffs' complaint from the Honduras lawsuit entitled Lopez, et al. v. Inter-Con Security Systems, Inc.,et al., case number 0801-2018-00935-LTO dated August 2, 2018. Dkt. 64-8, Exh. 1.

(2) IC Honduras' answer in the Honduran lawsuit dated November 14, 2018. Id., Exh. 2.

(3) Unit for Calculation of Labor Benefits and Compensations of each of the plaintiffs from the Secretary of Labor and Social Security. Id., Exh. 3; Dkt. 64-9, Exh. 3.

(4) Judgment from the Honduran lawsuit dated November 19, 2021. Id., Exh. 4.

(5) Judgment Order in the Honduran lawsuit dated December 14, 2021. Id., Exh. 5.

(6) Application for Labor Compensation filed in the Honduran lawsuit, dated March 15 2022. Id., Exh. 6.

(7) Labor Court Compensation Order in the Honduran lawsuit, dated April 7, 2022. Id., Exh. 7.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

(8) Letter from the Honduran Consulate in Los Angeles to the Ministry of Foreign Affairs and International Cooperation, dated July 18, 2019. Id., Exh. 8.

(9) Honduran Labor Code Article 708, International Labour Organization, at https://www.ilo.org/dyn/natlex/docs/WEBTEXT/29076/64849/S59HND01.htm. Id., Exh. 9.

(10) U.S. Department of States- Bureau of Consular Affairs website for the country of Honduras, at https://travel.state.gov/content/travel/en/legal/JudicialAssistance-Country-Information/Honduras.html/. Id., Exh. 10.

Inter-Con U.S. does not oppose plaintiffs' request for judicial notice. As to request No. 9, the Court finds and concludes that it is appropriate because relevant sources on foreign laws may be considered pursuant to Federal Rule of Civil Procedure 44.1. The Court also finds and concludes that judicial notice as to No. 10 is appropriate pursuant to Federal Rule of Evidence 201(2). As to the Honduran lawsuit related documents (No. 1-8), the Court takes judicial notice of their existence, but does not notice them for the truth of the matters asserted therein.

## IV.    LEGAL STANDARD

### A.    Summary Judgment

Summary judgment is appropriate where "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The moving party bears the initial burden of identifying relevant portions of the record that demonstrate the absence of a fact or facts necessary for one or more essential elements of each claim upon which the moving party seeks judgment. See Celotex Corp. v. Catrett, 477 U.S. 317, 323 (1986).

If the moving party meets its initial burden, the opposing party must then set out specific facts showing a genuine issue for trial in order to defeat the motion. Anderson v. Liberty Lobby, Inc., 477 U.S. 242, 250 (1986); see also Fed. R. Civ. P. 56(c), (e). The nonmoving party must not simply rely on the pleadings and must do more than make "conclusory allegations [in] an affidavit." Lujan v. Nat'l Wildlife Fed'n, 497 U.S. 871,

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
| --- | --- | --- | --- |
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

888 (1990); see also Celotex, 477 U.S. at 324. Summary judgment must be granted for the moving party if the nonmoving party "fails to make a showing sufficient to establish the existence of an element essential to that party's case, and on which that party will bear the burden of proof at trial." Celotex, 477 U.S. at 322; see also Abromson v. Am. Pac. Corp., 114 F.3d 898, 902 (9th Cir. 1997).

In light of the evidence presented by the nonmoving party, along with any undisputed facts, the Court must decide whether the moving party is entitled to judgment as a matter of law. See T.W. Elec. Serv., Inc. v. Pac. Elec. Contractors Ass'n, 809 F.2d 626, 631 & n.3 (9th Cir. 1987). When deciding a motion for summary judgment, "the inferences to be drawn from the underlying facts . . . must be viewed in the light most favorable to the party opposing the motion." Matsushita Elec. Indus. Co. v. Zenith Radio Corp., 475 U.S. 574, 587 (1986) (citation omitted); Valley Nat'l Bank of Ariz. v. A.E. Rouse & Co., 121 F.3d 1332, 1335 (9th Cir. 1997). Summary judgment for the moving party is proper when a rational trier of fact would not be able to find for the nonmoving party on the claims at issue. See Matsushita, 475 U.S. at 587.

**B.    Recognition of Foreign Judgments**

"In international diversity cases such as this one, enforceability of judgments of courts of other countries is generally governed by the law of the state in which enforcement is sought." Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 990 (9th Cir. 2013) (citation omitted). California has adopted its own version of the Uniform Foreign-Country Money Judgment Recognition Act ("Uniform Act") at Cal. Civ. Proc. Code §§ 1713–1725. The Uniform Act governs the enforcement of foreign-country judgments that (1) "grant[] or deny[] recovery of a sum of money," and (2) "under the law of the foreign country where rendered, [are] final, conclusive, and enforceable." Cal. Civ. Proc. Code § 1715(a). "Once coverage under the Uniform Act is established, the presumption in favor of enforcement applies," and the party resisting recognition must establish a ground for nonrecognition. De Fontbrune v. Wofsy, 39 F.4th 1214, 1222 (9th Cir. 2022), cert. denied, No. 22-531, 2023 WL 2744922 (U.S. Apr. 3, 2023) (quoting Naoko Ohno, 723 F.3d at 991)).

The Uniform Act provides two categories of grounds upon which to refuse recognition of a foreign-country judgment. The first category, codified at Section 1716(b), is mandatory. The second category, codified at Section 1716(c), is discretionary—even if there exists an applicable ground under the second category, the

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                          'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | | Date | November 18, 2024 |
|---|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | | |

Court "may nonetheless recognize a foreign-country judgment if the party seeking recognition of the judgment demonstrates good reason to recognize the judgment that outweighs the ground for nonrecognition."

## V.    DISCUSSION

### A.    Personal Jurisdiction over Inter-Con U.S. in Honduras

Inter-Con U.S. makes four arguments as to why the Honduran court did not have personal jurisdiction over it, rendering the default judgment unenforceable. The first two arguments are directed to Uniform Act § 1717(a), pursuant to which a foreign court lacks personal jurisdiction over a defendant if the foreign court lacks such jurisdiction "according to the standards governing personal jurisdiction in [California]" or if "the foreign court lacks personal jurisdiction under its own law." Uniform Act § 1717(a). First, Inter-Con U.S. argues that it was not subject to personal jurisdiction pursuant to California law because it had insufficient contacts with the Honduran forum and was not sufficiently intertwined with IC Honduras, its subsidiary, to be subjected to alter ego liability for IC Honduras's conduct in Honduras. Mot. at 1. Second, Inter-Con U.S. argues that personal jurisdiction was not proper pursuant to Honduran law because plaintiffs did not personally serve Inter-Con U.S. as required thereunder. Id. at 2. Third, Inter-Con U.S. argues that minimum due process requirements were not satisfied because notice was deficient. Id. at 13-14. Fourth, Inter-Con U.S. argues that the letters rogatory purportedly providing notice were sent by the Honduran Consulate in Los Angeles, rather than the Department of Justice, as required by as required by Article 4 of the Interamerican Convention on Letters Rogatory, resulting in an independent failure to satisfy due process. Id. at 14 (citing Lopez Rebuttal Rep. at 3). [3] For the reasons set forth below, the Court finds that even though there may be questions of fact as to whether service of process was effectuated in accordance with Honduran law, summary judgment should be granted in this case pursuant to Uniform Act § 1717(a) because the Court finds that plaintiffs have failed to show that a proper or sufficient basis for personal jurisdiction existed over Inter-Con U.S. in Honduras.

---

[3] The Court does not reach defendant's third and fourth arguments relating to due process violations in light of its determination that summary judgment is appropriate pursuant to Uniform Act § 1717(a).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

Inter-Con U.S. argues that it was not subject to personal jurisdiction in the Honduran court pursuant to either the laws of the United States or the laws of Honduras. Mot. at 1 (citing Uniform Act § 1717(a)). Inter-Con U.S. argues that "[i]ts contacts with Honduras consisted of nothing more than an ownership interest in a subsidiary that operated in Honduras, and providing high-level oversight," which "as a matter of black-letter law … is insufficient to subject a defendant to personal jurisdiction." Id. (citing Solt v. CSA Am. Testing & Certification LLC, 2024 WL 4266680 (W.D. Wash. Sept. 23, 2024)). Pursuant to Honduran law, Inter-Con U.S. argues, personal service was required, and here service was tendered by mail, sent to the wrong address, and "addressed to an incorrectly identified individual," which Inter-Con U.S. contends is insufficient service according both American and Honduran law. Id. at 2.

Inter-Con U.S. argues that pursuant to California law, "a court 'shall not recognize a foreign-country judgment if …[t]he foreign court did not have personal jurisdiction over the defendant.'" Id. at 8 (citing Uniform Act § 1716(b)(2)). Inter-Con U.S. contends that a foreign court does not have personal jurisdiction over a defendant "'if either of two conditions is met: (1) "[t]he foreign court lacks a basis for exercising personal jurisdiction that would be sufficient according to the standards governing personal jurisdiction in [California];" or (2) "[t]he foreign court lacks personal jurisdiction under its own law."'" Id. at 8 (quoting In re Rejuvi Lab'y, Inc., 26 F.4th 1129, 1133–34 (9th Cir. 2022) (quoting Uniform Act § 1717(a))). Inter-Con U.S. argues that here, both conditions are met. Id.

Inter-Con U.S. first argues that the Honduran court lacked personal jurisdiction over it based on principles of American law because it lacked sufficient contacts with Honduras to be subjected to personal jurisdiction there. Id. Inter-Con U.S. argues that the lawsuit arose out of employment by IC Honduras, a relationship to which it was not a party, and which it did not begin or terminate, and it had no other contacts with Honduras sufficient to support personal jurisdiction. Id. Inter-Con U.S. argues it is not subject to general jurisdiction in Honduras because general jurisdiction exists only where a business is incorporated or has its principal place of business, and Inter-Con U.S. is headquartered in Pasadena and incorporated in California, with "no other continuous and systematic contacts with that forum." Id. (citing Yamashita v. LG Chem, Ltd., 62 F.4th 496, 503 (9th Cir. 2023); Stack Decl. ¶¶ 2-3). Inter-Con U.S. contends that specific jurisdiction is also not appropriate in this case "because this suit does not arise out of Inter-Con U.S.'s

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                                    'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

intentional contacts with Honduras, but arises from the actions of its legally separate
subsidiary, IC Honduras." Id. at 8-9. According to Inter-Con U.S., a subsidiary's
contacts cannot be imputed to a parent company absent a showing that it is the
subsidiary's alter ego, which requires plaintiff to "'make out a prima facie case (1) that
there is such unity of interest and ownership that the separate personalities of the two
entities no longer exist and (2) that failure to disregard their separate identities would
result in fraud or injustice.'" Id. at 9 (quoting Ranza v. Nike, Inc., 793 F.3d 1059, 1073
(9th Cir. 2015) (cleaned up)). The subsidiary, Inter-Con U.S. argues, must be so
thoroughly controlled by the parent to "'render the latter the mere instrumentality of the
former.'" Id. (quoting Ranza, 793 F.3d at 1073).

Here, Inter-Con U.S. argues that IC Honduras operated independently and made its
own day-to-day operational decisions: it hired and fired its own employees, paid salaries,
and had its own management, offices, and bank accounts. Id. at 9-11. Inter-Con U.S.
claims that its eventual refusal to loan money to IC Honduras is if anything evidence of
"a refusal to conduct activities in the state," rather than evidence of purposeful availment.
Id. at 9. Inter-Con U.S. also argues that plaintiffs' reliance on the email sending a draft
termination notice as evidence of lack of independence is misplaced. Inter-Con U.S.
argues, "a parent company being in contact with a terminated employer's manager is
insufficient to subject the parent to jurisdiction in a resulting lawsuit." Id. at 10 (citing
Solt, 2024 WL 4266680, at *3 (finding that an employee of the parent company being in
touch with both plaintiff's manager and the subsidiary's human resources department and
being on the call terminating plaintiff's employment, while the parent company
controlled the payroll and set company policy was insufficient to establish the requisite
minimum contacts for personal jurisdiction)). Inter-Con U.S. contends that "[t]he
California Court of Appeal has also rejected personal jurisdiction on similar facts." Id.
(citing Sammons Enterprises, Inc. v. Superior Ct., 205 Cal.App.3d 1427, 1434 (1988)
(concluding that there was insufficient evidence for alter ego where the parent company
visited the subsidiary and fired management personnel, as well as taking "'general
executive responsibility for the operations of the subsidiary and review[ing] its major
policy decision[s]'" because without evidence that anyone from the parent company was
involved in the decision to terminate plaintiff, he could not show a substantial connection
among the forum state, the Inter-Con U.S., and his injury.)). Here, Inter-Con U.S. argues,
there is no evidence of Inter-Con U.S. having the kind of extensive control over IC
Honduras that would be necessary for personal jurisdiction, nor did Inter-Con U.S.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

terminate plaintiffs' employment or submit to personal jurisdiction by refusing to loan IC Honduras additional funds. Id. at 11.

Next, Inter-Con U.S. argues that Honduran legal principles do not support personal jurisdiction over it, and that the court's proceeding without effectuating personal service on Inter-Con U.S. violated due process. Id. Inter-Con U.S. argues that foreign judgments are unenforceable pursuant to California law when the foreign court does not have personal jurisdiction based on its own law and where the foreign court's proceedings that resulted in the judgment were not compatible with due process. Id. (citing In re Rejuvi Lab'y, Inc., 26 F.4th 1129, 1133–34 (9th Cir. 2022) (quoting Uniform Act § 1717(a)); Uniform Act § 1716(G)). Inter-Con U.S. cites various authorities for the proposition that personal jurisdiction is lacking without proper service of process. Id. at 11-12. Inter-Con U.S. argues that the Honduran labor law "which ostensibly allowed the default judgment to be entered requires that 'the defendant or their representative [be] personally notified of the lawsuit.'" Id. at 12 (citing dkt. 60-12 ("Lopez Rebuttal Rep.") at 13 (quoting Art. 708 of Honduran Labor Code)). Thus, Inter-Con U.S. contends, declaring a defendant in default when it was not personally served, as is the case here, is a due process violation pursuant to the laws of Honduras. Id. (citing Lopez Rebuttal Rep. at 2).

In opposition, plaintiffs first argue that at the motion to dismiss stage, the Court determined that "the service effectuated in the Honduran action is not insufficient as a matter of law." Opp. at 9 (citing dkt. 29 ("Order on Motion to Dismiss") at 7). Plaintiffs argue that Honduran Labor Code Article 708, which requires a defendant be "personally notified" cannot be "narrowly interpret[ed]" to equate "notified" with "served." Id. at 11. Rather, plaintiffs argue that the proper interpretation of the Code is that a defendant must have notice and opportunity to defend in the case. Id. Plaintiffs argue that accordingly, and because all inferences must be drawn in the non-movants' favor on a motion for summary judgment, the Court should find that the Honduran court had personal jurisdiction over Inter-Con U.S. Id. at 13.

In reply, Inter-Con U.S. reiterates that it had insufficient contacts with Honduras to establish personal jurisdiction. Reply at 2. Inter-Con U.S. argues that plaintiffs' argument is wholly based on "three purported facts—(1) Inter-Con U.S.'s refusal to lend additional money to IC Honduras, (2) IC Honduras's delivery of contracts, weapons, and cars to Inter-Con U.S. when concluding its operations, and (3) Inter-Con U.S. telling [IC] Honduras to give termination letters' to employees and 'reminding it to use [IC]

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

Honduras' company logo when sending the letter.'" Id. at 3 (citing Opp. at 13-14). Inter-Con U.S. argues that even if these three facts are true, they do not meet the Ninth Circuit standard for establishing alter ego liability, which plaintiffs fail to address. Id. Inter-Con U.S. argues that provision of loans is insufficient to establish alter ego liability. Id. Inter-Con U.S. also argues that plaintiffs cite no authority for their claim that the return of assets establishes it was the alter ego of IC Honduras, and contends that because Inter-Con U.S. was a creditor of IC Honduras, it has a claim to the assets itself. Id. at 4 (citing Stack Decl. ¶ 8). In any case, Inter-Con U.S. argues, the conduct alleged does not rise to the level of involvement required under Runza for a finding of alter ego liability. Lasty, Inter-Con U.S. argues that plaintiffs do not address the authorities it provided showing that jurisdiction is not proper even where the parent company was involved with terminations of employment. Id.

Inter-Con U.S. also restates its argument that the Honduran court lacked personal jurisdiction over it pursuant to Honduran law. Id. at 5. Inter-Con U.S. argues that plaintiffs' claim that personal notification pursuant to Honduran Labor Code Article 708 does not require personal service is not supported by authority, nor is it consistent with the language of the statute, wherein the word "personal" would be rendered meaningless if plaintiffs' interpretation were accepted. Id. at 5-6.

Uniform Act § 1717(a) establishes that "a foreign court lacks personal jurisdiction over a defendant if either of the following conditions is met: (1) [t]he foreign court lacks a basis for exercising personal jurisdiction that would be sufficient according to the standards governing personal jurisdiction in this state" or "(2) [t]he foreign court lacks personal jurisdiction under its own law." Uniform Act § 1717(a). Personal jurisdiction generally exists if it is permitted by the forum state's long-arm statute and if the "exercise of that jurisdiction does not violate federal due process." Pebble Beach Co. v. Caddy, 453 F.3d 1151, 1154-55 (9th Cir. 2006) (citing Fireman's Fund Ins. Co. v. Nat'l Bank of Coops., 103 F.3d 888, 893 (9th Cir. 1996). California's long-arm jurisdictional statute is coextensive with federal due process requirements, so that the jurisdictional analysis under state and federal law are the same. Cal. Civ. Proc. Code § 410.10; Roth v. Garcia Marquez, 942 F.2d 617, 620 (9th Cir. 1991). The Fourteenth Amendment's Due Process Clause requires that a defendant have "minimum contacts" with the forum state so that the exercise of jurisdiction "does not offend traditional notions of fair play and substantial justice." Int'l Shoe Co. v. Washington, 326 U.S. 310, 316 (1945).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

A court has general jurisdiction over a nonresident defendant when that defendant's activities within the forum state are "substantial" or "continuous and systematic," even if the cause of action is "unrelated to the defendant's forum activities." Perkins v. Benguet Consol. Mining Co., 342 U.S. 437, 446-47 (1952); Data Disc, Inc. v. Sys. Tech. Assocs., Inc., 557 F.2d 1280, 1287 (9th Cir. 1977). Courts exercise general personal jurisdiction when a defendant's contacts with the forum are sufficiently continuous and systematic "'as to render [it] essentially at home in the forum State.'" Yamashita, 62 F.4th at 503 (citing Goodyear Dunlop Tires Operations, S.A. v. Brown, 564 U.S. 915, 919 (2011)). A corporation is considered at home in its place of incorporation and its principal place of business. Ford Motor Co. v. Montana Eighth Jud. Dist. Ct., 592 U.S. 351, 359 (2021) (citing Daimler AG v. Bauman, 571 U.S. 117, 137 (2014)).

First, the Court concludes that the Honduran court did not have general jurisdiction over Inter-Con U.S. There is no evidence of substantial, continuous, and systematic contacts between Inter-Con U.S. and the Honduran forum. Inter-Con U.S. is incorporated in California and has its principal place of business in Pasadena. Stack Decl. ¶ 2. There is no evidence that Inter-Con U.S. itself conducted business operations in Honduras.

A court may have specific jurisdiction when a claim arises out of defendant's forum related activities. Rano v. Sipa Press, Inc., 987 F.2d 580, 588 (9th Cir. 1993). The test for specific personal jurisdiction has three parts:

> (1) The non-resident defendant must purposefully direct his activities or consummate some transaction with the forum or resident thereof; or perform some act by which he purposefully avails himself of the privilege of conducting activities in the forum, thereby invoking the benefits and protections of its laws;

> (2) the claim must be one which arises out of or relates to the defendant's forum-related activities; and

> (3) the exercise of jurisdiction must comport with fair play and substantial justice, i.e., it must be reasonable.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                     **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

Schwarzenegger v. Fred Martin Motor Co., 374 F.3d 797, 802 (9th Cir. 2004)
(citing Lake v. Lake, 817 F.2d 1416, 1421 (9th Cir. 1987)); see also Burger King Corp. v.
Rudzewicz, 471 U.S. 462, 475-76 (1985).  The plaintiff bears the burden of satisfying the
first two prongs and must do so to establish specific jurisdiction.  Schwarzenegger, 374
F.3d at 802.

The Court also concludes that the Honduran court did not have specific personal
jurisdiction over Inter-Con U.S.  Inter-Con U.S. has never maintained offices, had
employees, owned property, or been registered to do business in Honduras.  Stack Decl. ¶
3.  According to Inter-Con U.S., IC Honduras directly employed its own managers,
leased office space, maintained separate bank accounts, and processed all payments from
its clients independently of Inter-Con U.S.  Id. ¶ 5.  IC Honduras made its own day-to-
day decisions in Honduras.  Id. ¶ 6.  Because IC Honduras conducted these activities,
there is no question it personally availed itself of the Honduran forum.  Inter-Con U.S.,
however, as the parent company to IC Honduras, cannot be considered to have
purposefully availed itself of the Honduran forum as required for specific personal
jurisdiction merely through its connection to its Honduran subsidiary.  The Ninth Circuit
has held that a relationship between a parent company and its subsidiaries is not, standing
alone, sufficient to establish personal jurisdiction over the parent company based on a
subsidiary's own minimum contacts with the forum.  Doe v. Unocal Corp., 248 F.3d 915,
925 (9th Cir. 2001).  Thus, because Inter-Con U.S. did not conduct any activities of its
own in Honduras, Inter-Con U.S. would not be properly subjected to personal jurisdiction
in that forum.

However, Inter-Con U.S. could be subjected to personal jurisdiction on the basis of
the dealings of its subsidiary if its subsidiary were merely an "alter ego," that is an
extension of Inter-Con U.S., rather than a truly separate entity.  Mot. at 9 (citing Daimler,
571 U.S. at 136).  As Inter-Con U.S. argues, to be considered an alter ego, it must be
shown that the subsidiary and parent (1) have "'such a unity of interest and ownership
that the separate personalities [of the two entities] no longer exist and (2) that failure to
disregard [their separate identities] would result in fraud or injustice.'"  Ranza, 793 F.3d
at 1073 (quoting Unocal, 248 F.3d at 926).  Indeed, "[a]n alter ego or agency relationship
is typified by parental control of the subsidiary's internal affairs or daily operations."
Unocal, 248 F.3d at 926.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

     Here, Inter-Con U.S. puts forth evidence in support of its contention that it did not have the requisite involvement in IC Honduras's day-to-day business and plaintiffs fail to offer sufficient evidence to controvert this contention. Dkt. 67-1 ¶¶ 2, 4-7. Plaintiffs cite to an email from an Inter-Con U.S. employee to a manager of IC Honduras providing a draft termination letter that IC Honduras could use and suggesting that IC Honduras put the letter on its letterhead. Dkt. 64-9, Exh. 11 at 803. Plaintiffs also claim that Inter-Con U.S.'s ultimate refusal to extend additional funding led to IC Honduras's closure, and is therefore evidence that IC Honduras was a mere extension of Inter-Con U.S. Opp. at 14-15. The Court finds that this does not create a genuine issue of fact as to whether Inter-Con U.S. was sufficiently involved in the conduct of IC Honduras to render it subject to personal jurisdiction in its own right, nor was it so intertwined with IC Honduras's day-to-day operations as to make IC Honduras a mere alter ego. The Ninth Circuit, in Unocal, found that "provision of loans and other types of financing to subsidiaries" was insufficient for a finding of alter ego liability. Unocal, 248 F.3d at 927. Finally, plaintiffs argue that "[i]f [Inter-Con U.S.] and [IC] Honduras truly had a parent/subsidiary relationship, then the 33 contracts for pending work, 28 service contracts, batch of weapons and four cars that were sold should not have been delivered to [Inter-Con U.S.]," rather these assets should have been available to satisfy the claims of IC Honduras's creditors. Opp. at 13-14. In reply, Inter-Con U.S. notes that it was a creditor of IC Honduras and resultingly had a claim to those assets. Reply at 4. Inter-Con U.S. argues that regardless, this kind of involvement by a parent company, does not meet the standard established in Runza to warrant a finding of alter ego liability.[4]

     The three facts on which plaintiffs rely to demonstrate the intertwined nature of Inter-Con U.S. and IC Honduras are thus insufficient to support a finding that IC Honduras was an alter ego of Inter-Con U.S, and therefore personal jurisdiction in Honduras over Inter-Con U.S. has not been shown to exist on this basis.

     Inter-Con U.S. also argues that summary judgment is also appropriate in this case because personal jurisdiction was insufficient pursuant to Honduran law, which it argues requires personal service pursuant to Honduran Labor Code Article 708, and accordingly,

---

[4] While it appears that the Honduran court received various documentary evidence, Lopez Expert Rep. at 4, plaintiffs do not dispute that the court took no evidence and made no findings regarding the relationship of the Honduran and American entities. Reply at 8.

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**               **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

the judgment cannot be recognized because insufficient service is a basis for invalidating personal jurisdiction. Mot. at 12. Inter-Con U.S.'s foreign law expert also testified that personal service, as distinct from actual notice, is required pursuant to Honduran law. Lopez Rebuttal Rep. at 3. Plaintiffs dispute Inter-Con U.S.'s reading of the Code arguing Inter-Con U.S.'s interpretation is incorrect but offer no authority for the proposition. Opp. at 11. The Court finds that a question of fact remains as to whether service of process in this case complied with Honduran law.

Nonetheless, Inter-Con U.S. is entitled to summary judgment. Plaintiffs have failed to establish that the Honduran court had personal jurisdiction over Inter-Con U.S. pursuant to California law. Uniform Act § 1717(a) establishes that a foreign court lacks personal jurisdiction if such jurisdiction is lacking either under California law, or under the foreign state's own law, thus the finding of a lack of personal jurisdiction pursuant to California law is sufficient for a determination that the Honduran court did not have personal jurisdiction. Accordingly, the Court grants Inter-Con U.S.'s motion on this ground.

**B.      Repugnance to California Public Policy**

Inter-Con U.S.'s second basis for summary judgment is that "the Honduran court's decision to pierce the corporate veil without even considering whether Inter-Con U.S. had followed the proper formalities or exercised undue control is repugnant to California's strong public policy, and the resulting judgment is unenforceable." Mot. at 15. Inter-Con U.S. argues that pursuant to Uniform Act § 1716(c)(1)(C), a judgment should not be enforced if "'[t]he judgment or the cause of action or claim for relief on which the judgment is based is repugnant to the public policy of this state or of the United States.'" Id. (citing Uniform Act § 1716(c)(1)(C)). Inter-Con U.S. contends that the Honduran court "copy[] and past[ed]" plaintiffs' arguments and "relied by analogy on a provision that imposes joint liability on the 'beneficiary' of the work performed by a worker, reasoning that if contractors are jointly and severally liable, even more so should a foreign company be liable for the obligations of its local subsidiary," as well as implying that IC Honduras was a branch of Inter-Con U.S. rather than a subsidiary. Id. at 16 (citing Lopez Expert Rep. at 4). Inter-Con U.S. argues that this is repugnant to the public policy of California, which respects the separate corporate form, and treats a parent company as not liable for a subsidiary's acts unless the subsidiary "is merely an alter ego." Id. (citing Davidson v. Seterus, Inc., 21 Cal.App.5th 283, 305 (2018)). Inter-Con

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|----------|------------------------|------|-------------------|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

U.S. argues that this is "akin to an irrebuttable presumption of liability, based on only Inter-Con U.S. being deemed the beneficiary of the workers' labors," with no showing of a lack of separateness between the entities.  Id.

In opposition, plaintiffs argue that IC Honduras's "demise was the result of the lack of capital transfer by [Inter-Con U.S.]."  Opp. at 13.  Plaintiffs argue Inter-Con U.S. should not now be allowed to claim that it was only providing loans and that it had scant other interaction with IC Honduras, when it "asserts that it has no operations whatsoever, yet simultaneously claims to have knowledge of how [IC] Honduras operates."  Id. Plaintiffs argue that if the two entities shared only a parent company-subsidiary relationship, "then the 33 contracts for pending work, 28 service contracts, batch of weapons and four cars that were sold should not have been delivered to [Inter-Con U.S.]," rather they would have gone to creditors, thus showing that IC Honduras was just an extension of Inter-Con U.S.  Id. at 13-14.  The intertwined nature of the entities, plaintiffs argue, is also demonstrated by "[Inter-Con U.S.] telling [IC] Honduras to give termination letters to all of [IC] Honduras' employees and reminding it to use [IC] Honduras' company logo when sending the letter."  Id. at 14 (citing dkt. 64-5 ¶ 15). Lastly, plaintiffs argue that IC Honduras was dependent on "[Inter-Con U.S.]'s continuous inflow of capital to sustain and pay its employees" and that the company had to close when this ended.  Id. at 14-15.

In reply, Inter-Con U.S. contends that "[p]laintiffs' opposition entirely omits a response to this argument," as they cite no authority for the proposition that a judgment may be enforced from a foreign court that pierced the corporate veil with no consideration of corporate separateness.  Reply at 8.

Pursuant to Uniform Act § 1716(c)(1)(C), California courts shall not recognize a foreign judgment if "the cause of action or claim for relief on which it is based is repugnant to the public policy of this state or of the United States."  California courts have set the bar high for a finding of repugnancy under the Uniform Enforcement of Foreign Judgments Act.  Cap. Bank of Jordan v. Alaeddin, No. 22-CV-01597-FWS (KES), 2023 WL 9319000, at *15 (C.D. Cal. Dec. 1, 2023) (citing Naoko Ohno v. Yuko Yasuma, 723 F.3d 984, 1002 (9th Cir. 2013)).  A difference in law between the jurisdiction where the judgment was rendered and the jurisdiction where enforcement is sought is insufficient, rather courts must consider whether the cause of action or claim for relief is "so offensive to our public policy as to be prejudicial to recognized standards of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

morality and to the general interests of the citizens." Id. (quoting De Fontbrune, 39 F.4th at 1223 (quoting Hyundai Sec. Co. v. Lee, 232 Cal. App. 4th 1379, 1391 (2015), as modified (Jan. 14, 2015)) (internal quotations omitted)). The Court must determine whether recognition or enforcement of the judgment "'would tend clearly to injure public health, the public morals, or the public confidence in the administration of law, or would undermine that sense of security for individual rights, whether of personal liberty or of private property, which any citizen ought to feel.'" De Fontbrune, 39 F.4th at 1223 (quoting Hyundai Sec. Co., 232 Cal. App. 4th at 1391). The Ninth Circuit has said, citing the Restatement (Third) of Foreign Relations Law, that there are few judgments that should not be recognized due to violation of the forum's public policy. In re Hashim, 213 F.3d 1169, 1172 (9th Cir. 2000); see also Manco Contracting Co. (W.L.L.) v. Bezdikian, 45 Cal. 4th 192, 205, 195 P.3d 604, 613 (2008) (demonstrating that the California Supreme Court also looks to the Restatement (Third) of Foreign Relations Law).

California law dictates that the corporate form may not be disregarded unless there is proof "that there is such unity of interest and ownership as indicates cessation of the individuality and separateness of the individuals and the corporation." Maxwell Cafe, Inc. v. Dep't of Alcoholic Beverage Control, 142 Cal. App. 2d 73, 78 (1956) (citing Judelson v. Am. Metal Bearing Co., 89 Cal.App.2d 256, 263 (1948)). Indeed, "[t]he corporation must be treated as a separate entity until such proof is made." Id. Here there is no dispute that the Honduran court did not determine whether Inter-Con U.S. and IC Honduras were separate entities. Instead, plaintiffs argue that the evidence shows the lack of separateness between the entities. This is not the question at issue. Rather, the question is whether the Honduran court's failure to consider and decide the issue of separateness in reaching its determination that Inter-Con U.S. was properly held liable renders its decision one that is "repugnant to the public policy of this state," and therefore unenforceable pursuant to Uniform Act § 1716(c)(1)(C). Because the California courts and the Ninth Circuit have established a high bar for such a finding, the Court concludes that regardless of whether the Honduran court decided the issue of separateness, Inter-Con U.S. has not shown that the enforcement of this judgment would be injurious to public health, morals, and confidence in the administration of the law, nor would it undermine individuals' sense of security in their rights as required by De Fontbrune such that the Court should exercise discretionary authority to decline to recognize and enforce the judgment on this basis. De Fontbrune, 39 F.4th at 1223 (internal citations omitted).

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

### CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | | Date | November 18, 2024 |
|---|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | | |

Accordingly, the Court concludes that summary judgment for Inter-Con U.S. based on this ground would not be appropriate.

### C.    Due Process in the Honduran Judicial System

Inter-Con U.S. also argues that the nature of the Honduran court system, and the "systemic lack of due process" in a system "plagued by fraud, corruption, and lack of impartiality" bars enforcement of the default judgment in this Court.  Mot. at 17.  Pursuant to Uniform Act § 1716(b)(1), Inter-Con U.S. argues, California courts may not enforce judgments from judicial systems that are incompatible with the requirements of due process.  Id. (citing Uniform Act § 1716(b)(1)).  Inter-Con U.S. contends that the relevant cases "rely heavily on State Department reports" and provides language from the U.S. State Department's report on Honduras which describes that "'the justice system was poorly staffed, inadequately equipped, often ineffective, and subject to intimidation, corruption, politicization, and patronage'" and that judicial officials were susceptible to bribery and other influences.  Id. (citing dkt. 60-16).  Accordingly, Inter-Con U.S. argues, enforcement of the default judgment is barred due to "[t]he systemic corruption in Honduras."  Id. at 18.

In opposition, plaintiffs argue that Inter-Con U.S. has not provided evidence that the Honduran lawsuit involved fraud, corruption, or bias.  Opp. at 15.  Plaintiffs contend that there is a "long-recognized general rule that, when a judgment binds or is respected as a matter of comity, a 'let's see if we agree' approach is out of order."  Id. at 16 (citing Medellin v. Dretke, 544 U.S. 660, 670 (2005) (Ginsburg, J., concurring)).

In reply, Inter-Con U.S. argues that plaintiffs' opposition "is irrelevant and misstates the legal standard" because plaintiffs argue that there is no indication of fraud, corruption, or bias relating to this lawsuit, when Uniform Act § 1716(b)(1) precludes enforcement of a judgment reached in a judicial system which is, as a whole, plagued by these attributes and accordingly cannot provide due process in any case.  Reply at 9.  Inter-Con U.S. also argues that the authority plaintiffs cite is irrelevant and does not provide support for their position.  Id. at 10.

Pursuant to Uniform Act § 1716(b)(1), California courts shall not recognize a foreign judgment if it "was rendered under a judicial system that does not provide impartial tribunals or procedures compatible with the requirements of due process of

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

law." Uniform Act § 1716(b)(1). Courts have found this to be true in other contexts
where the State Department and other organizations have conducted studies and
published reports determining that a nation's court system could not provide due process.
Bank Melli Iran v. Pahlavi, 58 F.3d 1406, 1411-12 (9th Cir. 1995) (finding that defendant
had not been afforded due process in an Iranian court based on State Department and
Congressional reports); Osorio v. Dole Food Co., 665 F. Supp. 2d 1307, 1348 (S.D. Fla.
2009), aff'd sub nom. Osorio v. Dow Chem. Co., 635 F.3d 1277 (11th Cir. 2011)
(concluding that the Nicaraguan judicial system was not impartial based on State
Department findings that "'[j]udges political sympathies, acceptance of bribes, or
influence from political leaders reportedly often influenced judicial actions and
findings,'" and that a Nicaraguan judgment could accordingly not be enforced pursuant to
a Florida statute similar to the California statute at issue here). Inter-Con U.S. provides
evidence that similar conditions plague the Honduran judiciary. Mot. at 17. The State
Department, in its Honduras 2022 Human Rights Report raises concerns of corruption,
intimidation, patronage, ineffectiveness, and susceptibility to bribery. Id. (citing dkt. 60-
16). Similar concerns were found sufficient in Osorio for a determination that the foreign
judgment should not be enforced. Osorio, 665 F. Supp. 2d at 1348. There, the Court
explained that it found "the State Department's Reports particularly persuasive," but
noted "they are not alone in their critical assessment of Nicaragua's judiciary." Id.
Similarly, in this case, Inter-Con U.S.'s expert refers to other civil society reports raising
the same concerns. Lopez Expert Rep. at 11.

The Court therefore concludes that based on its determination that neither general
nor specific personal jurisdiction was shown to exist, under principles of California law
and the Due Process Clause of the Fourteenth Amendment, the Court need not and does
not reach the question of whether a reasonable factfinder could find that the Honduran
judicial system did not provide Inter-Con U.S. with due process on this basis.
Accordingly, summary judgment on this basis is denied as moot.

**D.     Unenforceable Fine or Penalty**

Finally, Inter-Con U.S. argues that approximately 93% of the Honduran default
judgment amount is "a non-compensatory 'penalty' that cannot be enforced under
California law.'" Mot. at 18. Pursuant to Uniform Act § 1715(b)(2), a judgment cannot
be enforced if it is a fine or other penalty. Id. (citing Uniform Act § 1715(b)(2)). Inter-
Con U.S. argues that damages are properly considered a penalty if a defendant is being

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**                    **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

compelled to pay plaintiff anything beyond compensation for injury inflicted by the defendant. Id. (citing Miller v. Mun. Ct. of City of Los Angeles, 142 P.2d 297, 308 (Cal. 1943)). Inter-Con U.S. contends that this requires looking to the four factors put forth in De Fontbrune: "'(1) whether the purpose of the award is to compensate an individual or to provide an example or punish an offense against the public; (2) whether the award is payable to an individual or to the state or one of its organs; (3) whether the judgment arose in the context of a civil action or through the enforcement of penal laws; and (4) whether the award was a mandatory fine, sanction, or multiplier.'" Id. at 19 (citing de Fontbrune, 838 F.3d at 1001). Inter-Con U.S. argues that the California Court of Appeal found in circumstances similar to these that "post-termination wages payable under Mexican law were an unenforceable penalty that could not be enforced under California law." Id. (quoting Plata v. Darbun Enterprises, Inc., 2014 WL 341667, at *1–2 (Cal. Ct. App. Jan. 31, 2014)).

Here, Inter-Con U.S. argues, at least three of the categories of damages, post-termination wages, "notice" damages, and severance, awarded to plaintiffs in the Honduran court represent an unenforceable fine or penalty of the kind precluded by De Fontbrune. Id. Post-termination wages, approximately 71% of the judgment according to Inter-Con U.S., are made up of the plaintiffs' entire salaries from the time of their termination to the date of judgment. Id. at 20 (citing Lopez Expert Rep. at 5). Inter-Con U.S. argues that about 19% of the judgment is a severance payment, which is "nothing more than a statutory penalty paid to the employees as a windfall, regardless of if they immediately start working for the same or greater salary." Id. (citing Lopez Expert Rep. at 6). Lastly, Inter-Con U.S. argues that about 3.5% of the judgment is "non-compensatory 'notice' damages resulting from IC Honduras's failure to provide sufficient pre-termination notice to employees." Id. at 21 (citing Lopez Expert Report at 6). Therefore, Inter-Con U.S. argues that more than 93% of the default judgment cannot be enforced pursuant to California law and the law in the Ninth Circuit. Id.

In opposition, plaintiffs argue that the judgment at issue is not an unenforceable penalty. Opp. at 16. Plaintiffs contend that "determining whether a foreign law is 'a penal law, in the international sense, so that it cannot be enforced in the courts of another state, depends upon ... whether its purpose is to punish an offense against the public justice of the state, or to afford a private remedy to a person injured by the wrongful act.'" Id. (quoting Huntington v. Attrill, 146 U.S. 657, 673-74 (1892)). The damages

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

award, plaintiffs argue, is not penal pursuant to the same test identified by Inter-Con U.S. Id. at 18. Plaintiffs argue that because the Plata decision on which Inter-Con U.S. relies is unpublished, the Court should not consider it. Id. at 17.

Plaintiffs argue that factor one of the test is not satisfied because the award is meant to compensate individuals and does not provide an example or punish an offense against the public. Id. at 18. Plaintiffs cite to the report of their expert who concluded that the purpose of the award was to "'ensure the wellbeing of the employees, similar to the social security program in the United States'" because Honduras does not have such a program. Id. at 19. These damages, plaintiffs argue, were contracted for by the parties in this case. Id. at 20. Plaintiffs claim that "[p]laintiffs' contracts contain a clause stating that: (1) anything that is foreseen in the contract agreement would be governed by the Honduras Labor Code and/or (2) if there are any disputes about the contract, then they would submit to the Jurisdiction and competence of the Labor Courts of the central district of Tegucigalpa." Id. (citing dkt. 64-5 ¶ 18). Plaintiffs contend that this compensation is not a fine or penalty, but regardless it was negotiated and agreed to by the parties. Id. As to the second factor, plaintiffs argue the award is payable to individuals rather than to the government. Id. The plaintiffs argue that under the third factor the judgment was a civil action that was filed by plaintiffs. Id. at 20-21. Lastly, plaintiffs argue that the award was not a mandatory fine or sanction multiplier because the parties chose the Honduran Labor Code as the framework for resolving their disputes. Id. at 21.

As to the severance award, plaintiffs argue that "California treats severance pay as wages," and that this portion of the award is not a fine or penalty. Id. at 22 (citing Triad Data Serv., Inc v. Jackson, 153 Cal. App. 3d Supp. 1). Plaintiffs argue that with regard to the notice damages, "the existence of signed contracts between the [p]laintiffs and [IC] Honduras undermines any argument that any awards under the Honduras Labor Code, such as 'notice' damages in this case, would be unenforceable." Id. at 22-23.

In reply, Inter-Con U.S. again argues that at least 93% of the default judgment is a penalty that is unenforceable under California law. Reply at 10. Inter-Con U.S. argues that plaintiffs are wrong to say Plata should not be considered because it is an unpublished decision, citing authority to support the notion that unpublished authority may be considered persuasive by federal courts. Id. at 11. As to post-termination wages, Inter-Con U.S. contests plaintiffs' argument that these payments substitute for a social

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES – GENERAL**          **'O'**

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

security system because it argues that Honduras does have a social security program, to which IC Honduras made monthly contributions, and therefore even this category of damages was a replacement for social security, IC Honduras already made the requisite payments and this would represent a double recovery. Id. at 11-12.

Inter-Con U.S. also argues that plaintiffs' argument that the contracts between plaintiffs and IC Honduras incorporated principles of the Honduran Labor Code is "directly contrary to the language of at least one of the contracts," and is otherwise irrelevant because the language plaintiffs cite "did not create a *contractual* right to an award of post-termination salary for three years, but simply provided that aspects of the relationship not addressed in the contract … would be governed by other laws and regulations." Id. at 12. Additionally, Inter-Con U.S. argues that the default judgment award was based on the Labor Code rather than breach of contract, so the contracts terms do not change the fact that the judgment is not compensatory. Id. Inter-Con U.S. contends that as to severance, plaintiffs make no argument about any injury being compensated by this award and argues that plaintiffs' reliance on Triad Data Servs. is misplaced because that case involved severance awarded pursuant to a contract and did not address enforcement of a foreign judgment for severance. Id. at 13.

In order to determine whether a judgment is an unenforceable fine or penalty pursuant to Uniform Act § 1715(b)(2), the Court asks "'whether it appears … to be [] in its essential character and effect, a punishment of an offense against the public, or a grant of a civil right to a private person.'" De Fontbrune, 838 F.3d at 1002 (quoting Huntington v. Attrill, 146 U.S. 657, 683 (1892)). In this case, the post-termination wages, "notice" damages, and severance, are all properly considered a fine or penalty pursuant to Uniform Act § 1715(b)(2). As the Plata court concluded with regard to post-termination wages, "[a]lthough these amounts are to be paid to the workers, rather than the state, these amounts cannot be reasonably be interpreted to be remedial in any sense of the word, i.e., intended as compensation to the workers for lost wages or other employment benefits." Plata, 2014 WL 341667, at *5. The Court concludes that plaintiffs' argument about the award being a substitute for social security lacks merit, given the fact that Honduras does have a Social Security law that protects employees, a program that IC Honduras made monthly contributions to before its closure. Reply at 11-12 (citing Lopez Rebuttal Rep. at 5-6). The Court is also unpersuaded by plaintiffs' argument that their employment contracts allow for this kind of damages. The contract

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

CIVIL MINUTES – GENERAL                    'O'

| Case No. | 2:22-cv-09080-CAS (Ex) | Date | November 18, 2024 |
|---|---|---|---|
| Title | Abimael Enrique Corea Lopez et al v. Inter-Con Security Systems, Inc. et al | | |

language seems to provide, as Inter-Con U.S. argues, that any disputes not covered in the contract will be governed by the Honduran Labor Code.  Id. at 12 (citing dkt 64-9 at 433, 421).  The fact that this kind of award is permissible under the Honduran Labor Code does not render it enforceable in California courts.

The Court concludes that no reasonable factfinder could determine that the damages for post-termination wages, "notice" damages, and severance were anything other than a fine or penalty, rendering them unenforceable.[5]

## VI.    CONCLUSION

In accordance with the foregoing, the Court **GRANTS** Inter-Con U.S.'s motion for summary judgment.

The Court **DENIES** plaintiffs' cross motion for summary judgment.

IT IS SO ORDERED.

|  | 00 | : | 22 |
|---|---|---|---|
| Initials of Preparer | | CMJ | |

---

[5] The Court notes that defendant does not contend that the other 7% of the damages awarded would not be enforceable in this Court, were the other bases for granting summary judgment not present.